OPINION OF THE COURT

Per Curiam.

Order dated June 17, 1981 is affirmed, with $10 costs.
Landlord initiated seven nonpayment proceedings in response to which the respective tenants interposed an answer consisting of specific denials and various affirmative defenses and counterclaims. As a first affirmative defense and counterclaim, the respective tenants asserted actual partial eviction by the landlord, and each sought an abatement of rent and recovery of $100,000. As a second *111 affirmative defense and counterclaim, the respective tenants asserted a breach by the landlord of the warranty of habitability, and each sought an abatement of rent and damages in the amount of $100,000. As a third affirmative defense and counterclaim, the respective tenants alleged that the landlord was guilty of fraud and each sought an abatement of rent and damages in the amount of $100,000.
Landlord moved to dismiss these affirmative defenses and counterclaims for legal insufficiency, seeking in the alternative an order severing the defenses and counterclaims, with leave to tenants to prosecute each in a plenary action. The basis for that alternative relief was a provision in the parties’ leases which expressly provides “that in the event landlord commences any summary proceeding Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding except as permitted by statute.”
These nonpayment proceedings involve seven apartments in a high-rise apartment building located at 345 East 56th Street in Manhattan. The building was constructed in 1960 by defendant’s predecessor in title, and contains two lines of apartments (C & D) which were represented by the landlord in a printed brochure to each contain two bedrooms. Thus, for example, apartment 16D was advertised as a two-bedroom apartment in the New York Times in January, 1974. Earlier in 1970, a prospectus filed with the Attorney-General for a co-operative conversion, which was subsequently withdrawn, represented the “C” and “D” lines as two-bedroom apartments. Although the smaller bedroom initially contained all appurtenances necessary for its use as a bedroom, i.e., closets and a window, it was built to the lot line on plans filed with the Department of Buildings, designating the space in question as a “Dressing Room, not included in the room count.”
Subdivision 2 of section 30 of the Multiple Dwelling Law regulating “Lighting and ventilation of rooms” mandates that “every room, including kitchens, water-closet compartments and bathrooms, shall have at least one window opening directly upon a street or upon a lawful yard, court or space above a setback upon the same lot as that occupied by the multiple dwelling in which such room is situated. *112 Every such window shall be so located as to light properly all portions of the room.”
The consequences of the failure of the smaller “bedroom” to conform to that provision of the Multiple Dwelling Law and the discrepancy between the filed plans and the landlord’s representation of the apartments as suitable for two-bedroom use did not surface until 1980, when construction was undertaken on a high-rise apartment on the adjoining lot. The new construction, also built to the lot line, has the effect of completely sealing off light and ventilation in the second bedroom. After an inspection was made by the Department of Rent and Housing Maintenance on September 3,1980, violations were filed in the division of housing, to wit: “Reinforced Concrete Structure being erected approx. 6" to North of above premises - which will eventually block light and ventilation to North West Room of North Apts. D line, North East room of North West Apts. ‘C’ line -approx. 2nd to 16th Fir.”
In its order dated June 17, 1981, the court below dismissed tenants’ first and second affirmative defense and counterclaim and severed their third counterclaim. In rejecting tenants’ claims of actual partial eviction and breach of warranty, the court below gave substantial weight to the following provision contained in tenants’ leases: “Landlord shall not be liable for any interference, permanent or temporary, with the light, ventilation or view, caused by construction conducted by or on behalf of the Landlord, whether on the same parcel of land as the building in which the premises are located or elsewhere, or caused by any other operations in construction of any nature by any other person or governmental body.”
It appears that the above-quoted clause was not a special provision inserted into the tenants’ leases because of the configuration of potential new construction in the area of landlord’s building, but is a standard clause inserted in standard New York real estate leases to protect the landlord from the consequences of the continually shifting landscape in this city. That we are dealing with a general provision designed to protect landlords from the consequences of the impairment of a tenant’s “light, ventilation or view” by new construction, makes that provision no less *113 binding upon the tenants herein. In other words, the lease specifically spells out that the landlord makes no assurance regarding continuation of existing light, ventilation and view, and the tenant having accepted the lease on those terms cannot now complain, in the absence of specific proof of fraud, that they have been treated unfairly. Nor does this provision appear to be in any sense unconscionable. The landlord has no control over adjacent property and where windows abut a building line, those windows are subject to being blocked by new construction.
While section 235-b of the Real Property Law, which establishes the statutory scheme of the warranty of habitability, does provide (subd 2) that “[a]ny agreement by a lessee or tenant of a dwelling waiving or modifying his rights as set forth in this section shall be void as contrary to public policy”, the disclaimer here at issue does not impinge upon the warranty of habitability. What the disclaimer does do is define the scope of landlord’s conveyance of the right to continued receipt of light, ventilation and view. Since that conveyance has not been reduced, the tenants may not prevail upon their defenses and counterclaims of actual partial eviction and breach of the warranty of habitability.
If the tenants were actually defrauded and misled, then they may prevail on the claim of fraud. That claim, however, is not properly litigated in the context of this nonpayment proceeding and it was thus properly severed.
Accordingly, we affirm the order appealed from.
Concur: Hughes, J. P., Tierney and Asch, JJ.